593 S.W.2d 124 (1979)
In re J. R. C., a child.
No. 1496.
Court of Civil Appeals of Texas, Corpus Christi.
December 28, 1979.
Robert B. Benton, O'Leary, Sanchez & Benton, Brownsville, for appellant.
Selden Snedeker, Dist. Atty., Thomas Sullivan, Asst. Dist. Atty., Brownsville, for appellee.

OPINION
YOUNG, Justice.
This is an appeal from an order of a juvenile court waiving jurisdiction and transferring the appellant to a criminal district court for trial for capital murder. After a full hearing on the matter, the juvenile court certified the appellant as an adult to stand trial. We affirm the judgment of that court.
*125 Briefly, the facts of this case are as follows. J.R.C., a 15 year old boy, was charged with capital murder. This alleged offense occurred in Harlingen, Cameron County, Texas, when J.R.C. and his brother broke into the home of Mrs. Veda Baker and shot and killed her on or about the 30th day of November, 1978. Many factors indicated to the Harlingen police that J.R.C. and his brother were responsible for this act. The brothers were arrested in Missouri and returned to Texas soon after the alleged offense took place.
Upon returning to Harlingen, the defendant-appellant gave a confession to the magistrate after being advised of his rights. Although J.R.C. would not sign his hand-written confession at first, he later did sign it in the sole company of Honorable Thomas B. Thompson, acting as a magistrate.
On the 15th of January, 1979, the petition was filed in the juvenile court requesting a waiver and transfer. The juvenile court undertook steps to comply with § 54.02 of the Family Code by appointing a psychologist and a psychiatrist to perform a complete examination of the child and by ordering the director of the juvenile probation department of Cameron County to make a full investigation into the life of the child, complete with diagnostic study, social evaluation, and a written report outlining the circumstances of the alleged offense.
At the hearing the court heard from many witnesses who related facts about the alleged offense and the boy's history. At the conclusion of the hearing, the judge filed his findings which, in summary held that J.R.C. should be certified as an adult for trial in a criminal district court on the charge of capital murder.
This Court has had the opportunity to address the problem of certification of a minor as an adult for criminal trial on other occasions. See B.R.D. v. State, 575 S.W.2d 126 (Tex.Civ.App.Corpus Christi 1978, writ ref'd n.r.e.); Hughes v. State, 508 S.W.2d 167 (Tex.Civ.App.Corpus Christi 1974, writ ref'd n.r.e.). In each of these cases, we have taken precautions to insure that the waiver and transfer hearing guidelines as set out by § 54.02 of the Family Code have been strictly followed.
In the first point of error, counsel for the appellant contends that the judge was in error in overruling his motion to withdraw from the case. Counsel contends that he should not have been appointed to the case because of his lack of experience and unfamiliarity with criminal trials.
An attorney licensed in the State of Texas has both the privileges and responsibilities of being a member of the Bar. One of the duties of attorneys of this State is to represent clients when they are unable to obtain counsel due to lack of money or other reasons. The rotating appointment system employed in Cameron County attempts to spread the hardships of this duty among all members of the profession.
It is true that there are some cases in which a judge should permit withdrawal of counsel in order to insure adequate representation, but such is not the case before us. The waiver and transfer proceeding, being civil in nature, is but a preliminary hearing to determine whether a party should be tried as an adult or juvenile. There is no determination of guilt or innocence, nor is there any confinement or punishment assessed. Matter of P.B.C., 538 S.W.2d 448 (Tex.Civ.App.El Paso 1976, no writ). Our review of the record shows that the appellant was adequately represented by counsel in this case, and the judge properly denied permission to withdraw. Point 1 is overruled.
The second, third, and fourth points of error are interrelated and will be treated together. Point 2 claims that the court should have permitted counsel for appellant to choose his own psychiatrist for examination, point 3 asserts the fundamental right to an electroencephalogram, and point 4 raises a sufficiency of the evidence complaint as relates to the court's finding of "no mental disease or defect." Counsel for appellant bases his argument on the presence of organic brain deficiency possibly caused by a blow to the frontal region of appellant's head when the appellant was younger.
*126 The evidence as to the presence of organic brain damage is very sketchy and questionable in source. By no means can we conclude that the finding of the court that the appellant had no organic brain damage was against the great weight and preponderance of the evidence. See R.K.M. v. State, 535 S.W.2d 676, 680 (Tex.Civ.App. San Antonio 1976, no writ).
Furthermore, the court complied with § 54.02(d) which requires a "complete diagnostic study, social evaluation, and full investigation of the child" by appointing a psychologist, a psychiatrist, and a probation officer to make full reports. The psychologist testified that the appellant had no "mental disease or defect." The psychiatrist testified that the child was suffering from a personality disorder. The only evidence as to organic brain damage is that of the mother, whose testimony is contradictory and equivocal.
Other courts have held that compliance with the statute is met by receiving complete reports from such specialists as psychologists, psychiatrists, and probation officers. Matter of I.J., 546 S.W.2d 110 (Tex. Civ.App.Eastland 1977, no writ); In Re W.R.M., 534 S.W.2d 178 (Tex.Civ.App. Eastland 1976, no writ). We therefore overrule points 2, 3, and 4.
The question of insufficient compliance with § 51.09 of the Family Code outlining the requirements of waiver of rights is raised by point of error 5. This section of the Family Code was amended in 1975 to permit the waiver of constitutional rights against self incrimination so that a confession could be given, and could occur in the sole presence of a magistrate. [§ 51.09(b)(1)] See Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). As long as these procedural safeguards are met, then the confession is permitted. We hold that there was a proper waiver by the appellant of his rights before giving his confession to the magistrate.
The magistrate testified at the trial that the full warnings as set out in § 51.09(b)(1)(A-F) were given to the appellant. Although the appellant was reluctant to sign his written confession at first, he did sign the statement after talking with the magistrate. There is no evidence of coercion, persuasion, or enticement. Two police officers also support the recitation of events by the magistrate. It appears that the appellant was given the warning under § 51.09(b)(1) several times. We overrule point of error 5.
The final point of error raises a no evidence point as to the court's finding of "specific criminal culpability of the appellant for the purposes of a § 54.02 order to waive juvenile jurisdiction." This Court notes that the purpose of the § 54.02 hearing is not to determine specific criminal culpability. As we said in B.R.D. v. State, supra, at 131, "The purpose of the transfer proceeding ... is to determine whether the best interests of the child and of society would be served better by maintaining the child under juvenile court jurisdiction or by transferring him to a criminal district court for adult proceedings. It is not to determine the guilt or innocence of the child." See also: B.L.C. v. State, 543 S.W.2d 151 (Tex.Civ.App.Houston [14th Dist.] 1976, writ ref'd n.r.e.); Matter of Honsaker, 539 S.W.2d 198, 201 (Tex.Civ. App.Dallas 1976, writ ref'd n.r.e.).
It appears that counsel for the appellant is attempting to present a no evidence point on the factors used to determine whether the court should make the transfer. [§ 54.02(f)(1-6)]. We believe that there was some evidence to support each and every one of these considerations.[1] The offense *127 was capital murder, brutally committed, of Mrs. Veda Baker. [§ 54.02(f)(1)]. There is evidence that the appellant and his brother talked about the murder beforehand, discussing how they would accomplish the act. The evidence also points out how Mrs. Baker was shot in the head, her chest crushed, and her body cut. [§ 54.02(f)(2)]. There was testimony that a grand jury would return an indictment on such facts. [§ 54.02(f)(3)]. Probation officers, a psychologist, and a psychiatrist testified that the appellant was mature and had a consciousness of what took place and what was going on around him. [§ 54.02(f)(4)]. The list of offenses that the appellant committed included repeated felony offenses for a period of four years. [§ 54.02(f)(5)]. The public was in fact in danger by the continued freedom of this child, who showed a callous disregard for life and personal property. The rehabilitation services of the State had been tried for many years with no success. [§ 54.02(f)(6)]. In summary, there was ample evidence to support the waiver and transfer of the child to the criminal district court. Point 6 is overruled.
The judgment of the trial court is affirmed.
NOTES
[1] "§ 54.02 Waiver of Jurisdiction and Discretionary Transfer to Criminal Court

(f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:
(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
(2) whether the alleged offense was committed in an aggressive and premeditated manner;
(3) whether there is evidence on which a grand jury may be expected to return an indictment;
(4) the sophistication and maturity of the child;
(5) the record and previous history of the child; and
(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."